

F I L E D
FEB - 4 2020
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>D'LANTA BERNARD BOONE,<br><br>Defendant. | **Under Seal**<br><br>Case No. 1:20-mj-_50_ |

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Bernard Mensah, a Special Agent ("SA") with the Bureau of Alcohol, Tobacco,

Firearms and Explosives ("ATF"), being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I have been a Special Agent with the ATF since May 2017.  I am currently

assigned to the ATF Washington Field Division's Group II.  My assignments include

investigating individuals who are involved in the illegal possession and transfer of firearms,

violent crimes involving firearms, and narcotics and firearms trafficking.  I received a Bachelor's

degree in Criminal Justice and Social Science in 2006.  I served as a United States Secret Service

Police Officer from 2007 to 2008 and as a Federal Air Marshal with the United States Federal

Air Marshal Service from 2008 to 2017.  I am also a graduate of the Uniform Police Training

Program, the Criminal Investigator Training Program, and the ATF Special Agent Basic Training

program, which are all conducted by the Federal Law Enforcement Training Center at Glynco,

Georgia.

2.      As an ATF agent, I have participated in investigations of individuals and entities

for possible violations of the federal firearms laws, including Title 18 and Title 21 of the United

States Code. During these investigations, I have conducted and participated in surveillance

operations, executed search warrants and arrest warrants, developed sources of information, and

conducted international operations that collaborated with foreign law enforcement entities. I

have also analyzed phone and internet records and participated in the search and seizure of

electronic devices, including cellular phones and "smart" phones, and e-mail accounts.

3.      I submit this affidavit in support of a criminal complaint charging D'LANTA

BERNARD BOONE ("BOONE"), with aiding and abetting the making of false statements in

relation to the purchase of a firearm, in violation of Title 18, United States Code, Sections

924(a)(1)(A) and 2.

4.      The facts in this affidavit come from my personal observations, my training and

experience, and information obtained from other agents and witnesses. All observations

referenced in this affidavit that I did not personally make were relayed to me by the person(s) who

made such observations or in reports that detailed the events described by those person(s). This

affidavit is intended to show only that there is sufficient probable cause for the requested warrant

and does not set forth all of my knowledge about this matter.

**PROBABLE CAUSE**

A.      Recovery of Gun A

5.      On November 20, 2018, your affiant reviewed a Firearm Trace Summary listing

Jeanna Nicole KINNEY ("KINNEY") (BOONE's then-girlfriend and the mother of his child) as

the purchaser of a Glock, 26, 9mm pistol bearing serial number ("SN") WUF093 (hereinafter "Gun

A"), which the Metropolitan Police Department (MPD) recovered, on April 21, 2018, in the

possession of a convicted felon during an arrest in Washington D.C. The firearm had a 143 day

time to crime. MPD also recovered from this felon: an extended magazine feeding device with a

31 round capacity with 29 rounds inside of it; two clear plastic bags containing a white crystal like substance that tested positive for 3 grams and 3.5 grams of amphetamines; and one clear plastic bag containing blue zips with a white rock like substance that tested positive for 4 grams of cocaine.

6.      Gun A was of particular interest to law enforcement because ATF's National Integrated Ballistic Information Network (NIBIN) confirmed two NIBIN "hits" for Gun A. Specifically, Gun A had been used in a Sound of Gun Shot incident and a Carrying a Pistol without a License in Washington, D.C. in 2018.

7.      Subsequently, your affiant reviewed a copy of the ATF Form 4473 for Gun A filled out by KINNEY, on November 29, 2017, at Virginia Arms Company in Manassas, Virginia, within the Eastern District of Virginia, as well as the receipt from the purchase of Gun A. The items showed that KINNEY purchased Gun A for $452.50 cash. On this form, KINNEY stated that she was the actual buyer of the firearm listed on the form and provided a current residential address on Gambril Drive, Manassas, Virginia.

B.      Additional Firearms Purchased by KINNEY on Behalf of BOONE in the EDVA

8.      On November 21, 2018, your affiant received copies of several ATF Form 4473s filled out by KINNEY. One form showed that, on June 25, 2018, KINNEY purchased a Springfield, model XD9, 9mm pistol, bearing SN HD928777 (hereinafter "Gun B") from Vienna Arsenal LLC, an FFL located in Vienna, Virginia, within the Eastern District of Virginia.

9.      Another Form 4473 showed that, on December 2, 2017, KINNEY purchased a Springfield, model XD-9, 9mm pistol, bearing SN XD272893 (hereinafter "Gun C"), and a Smith and Wesson, model SD40VE, .40 caliber pistol, bearing SN FWS0054 (hereinafter "Gun D") from Manassas Pawn, an FFL located in Manassas, Virginia, within the Eastern District of Virginia. A

3

receipt for this purchase showed that KINNEY paid $532 for the firearms. The FFL also produced

a photo copy of KINNEY's Virginia Driver's License that was obtained at the time of purchase.

An employee of Manassas Pawn explained to your affiant that he photo copied KINNEY's driver's

license and retained it because he thought something was suspicious about KINNEY's purchase.

10.     Another Form 4473 showed that, on April 11, 2018, KINNEY purchased a Taurus,

model PT 24/7 Pro, .40 caliber pistol, bearing SN SZD10776 (hereinafter "Gun E"), and a Taurus,

model PT 809C, 9mm pistol, bearing SN TIR55120 (hereinafter "Gun F") from Manassas Pawn.

A receipt for this purchase showed that KINNEY paid $553.20 for the firearms.  A copy of

KINNEY's driver's license retained by the store listed her residence as being on Gambril Drive in

Manassas, Virginia.  KINNEY listed this same address on all of the ATF Form 4473s for her

firearms purchases.

11.     On January 24, 2019, ATF received a copy of an ATF Form 4473 filled out by

KINNEY for the purchase of a Glock, model 43, 9mm pistol, bearing SN BGKS396 (hereinafter

"Gun G"), on June 17, 2018, from NOVA Armory, an FFL located in Arlington, Virginia, within

the Eastern District of Virginia. A receipt for this purchase showed that KINNEY paid $519.40

for the firearm.

12.     On November 30, 2017, KINNEY purchased a High Point, C9, 9mm pistol, bearing

SN P1991620 (hereinafter "Gun H") from Nova Firearms, an FFL that was located in Falls Church,

Virginia, within the Eastern District of Virginia, at the time KINNEY purchased the firearm.

13.     For each of the eight firearms KINNEY purchased from FFLs, she was required by

law to truthfully fill out ATF Form 4473.  On each occasion, KINNEY responded "yes" to a

question on ATF Form 4473 that she was the actual buyer of the firearm listed for purchase.  In

addition, on each ATF Form 4473 KINNEY listed her address as being on Gambril Drive, in

Manassas, Virginia. On Section 14 of each ATF Form 4473, KINNEY certified by signature that her answers on the form were "true, correct, and complete," and that she understood that "making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to [the] transaction, is a crime punishable as a felony under Federal law."

C.      Identifying BOONE as "Tae"

14.     On November 28, 2018, your affiant interviewed KINNEY's mother at KINNEY's mother's residence, which is the same address on Gambril Drive in Manassas, Virginia KINNEY had listed on each of her ATF Form 4473s.

15.     KINNEY's mother informed agents that KINNEY's boyfriend and the father of KINNEY's child is an individual known to KINNEY's mother as "Tae". KINNEY's mother stated that "Tae" lived in Maryland and he was a Special Police Officer (SPO) in Washington D.C.

16.     Through law enforcement databases, your affiant was able to identify "Tae" as BOONE, who is KINNEY's boyfriend and the father of KINNEY's child. BOONE is a local aspiring rapper who goes by the stage name, "Tiizie Tae". ATF also identified BOONE's social media accounts and discovered that BOONE's Instagram account name is "Tiizie Tae" and his Facebook user name is "Tae Boone".

17.     While reviewing BOONE's public Instagram account, SAs noticed that BOONE had posted several music videos in which he can be seen brandishing and possessing handguns. ATF then discovered BOONE's YouTube page and observed BOONE possessing and brandishing handguns in multiple music videos. For example, your affiant reviewed a YouTube music video, published on January 10, 2018, "Shooters", featuring BOONE as the rapper Tiizie Tae. While reviewing this music video, your affiant identified BOONE holding and brandishing what ATF noticed to be a Springfield XD pistol variant. The firearm possessed by BOONE in the music

video has an extended magazine inserted into the magazine well of the pistol.  Furthermore, your

affiant confirmed that this music video was recorded in Largo, Maryland.  KINNEY purchased

Gun C, also a Springfield XD pistol, approximately a month before this video was published on

YouTube, on December 2, 2017.

      D.     Initial Interview with KINNEY

18.    On November 29, 2018, your affiant interviewed KINNEY in reference to the eight

(8) firearms she purchased from multiple FFLs in Virginia between November 29, 2017 and June

25, 2018.

19.    During the course of the voluntary interview, KINNEY confirmed that the

handwriting on the ATF Form 4473, dated November 29, 2017, was hers and stated that she

remembered purchasing Gun A.  KINNEY initially claimed that Gun A was in storage.  KINNEY

stated that she was positive Gun A was in storage at her boyfriend BOONE's house in Maryland.

Your affiant knew that Gun A was recovered approximately seven months earlier, on April 21,

2018, in the possession of convicted felon in Washington, D.C.  ATF then asked if Gun A was

registered in Maryland with the Maryland State Police and KINNEY responded, "Yes".  When

asked if all her firearms were in Maryland, KINNEY stated, "Yea, he has them locked away".

KINNEY told your affiant that BOONE lives on "Iverson".  When asked if the address was on

Iverson Street in Temple Hills, Maryland, KINNEY responded, "yea".

20.    KINNEY confirmed that she filled out all of the forms and claimed that the

firearms were all hers.  Your affiant asked KINNEY how many firearms she purchased within the

last year and KINNEY responded, "three or four...or something like that".  When SAs told

KINNEY that she had, in fact, purchased eight (8) firearms, KINNEY was in disbelief.

6

21.    SAs asked KINNEY why she kept her firearms in Maryland and not in Virginia to which KINNEY responded, "They just are…my mother don't like them in the house." SAs asked KINNEY for BOONE's telephone number and KINNEY contacted BOONE via text and asked if she could give SAs his phone number. KINNEY stated that BOONE agreed and KINNEY provided SAs with two phone numbers for BOONE: one number with a Maryland area code and the other with a Washington, D.C. area code.

22.    As the conversation continued, KINNEY stated that she was supposed to "gift" BOONE the firearms so that he could register them in Maryland but she was confused about the firearm registration process in Maryland.

E.    Interview of BOONE and Seizure of firearms

23.    On November 29, 2018, your affiant conducted a phone interview and made arrangements to meet BOONE at his residence, located on Iverson Street in Temple Hills, Maryland.

24.    During the phone conversation, your affiant explained to BOONE KINNEY informed SAs that she stored her firearms at his residence. BOONE told your affiant that the firearms were at his residence in Maryland. BOONE also told SAs that he had a residence in Washington, D.C., located on Blakney Lane, SE.

25.    Your affiant explained to BOONE that an investigation was ongoing and that SAs needed to see the firearms purchased by KINNEY and stored at BOONE's Maryland residence. BOONE told your affiant that the firearms were in a safe at his residence and that he would be able to show them to agents after work.

26.    At approximately 12:00 p.m., your affiant traveled to BOONE's residence in Temple Hills, Maryland to meet BOONE.

27.     At approximately 1:52 p.m., BOONE arrived at his residence.  At BOONE's car, your affiant explained to BOONE that he needed to see KINNEY's firearms.  BOONE told your affiant that Gun G, purchased by KINNEY on June 17, 2018, was in his bag and asked your affiant if he wanted the gun.  Your affiant responded in the affirmative and with consent from BOONE, retrieved Gun G from BOONE's bag.

28.     Shortly thereafter, BOONE invited your affiant into his residence where he was interviewed.  BOONE confirmed KINNEY purchased Gun G, on June 17, 2018, from Nova Armory.  BOONE stated that KINNEY purchased Gun G, on June 17, 2018, and gave him the pistol for his birthday, which is also on June 17.  BOONE stated that KINNEY surprised him with the firearm the day after she purchased it.

29.     Your affiant asked BOONE about Gun A, purchased by KINNEY on November 29, 2017.  BOONE told your affiant that KINNEY traded that firearm.  When asked about Gun E and Gun F (two Taurus pistols purchased by KINNEY), BOONE told SAs that he had one Taurus pistol upstairs in his bedroom but claimed that he did not know anything about the other Taurus pistol.  When asked about Gun D, BOONE stated that he did not remember it but told SAs he had another type of firearm in the residence.

30.     BOONE, initially, told SAs that he had four firearms in the house, but later stated he had five firearms in the house.  Throughout the interview, BOONE appeared confused and uncertain about the number of firearms he had in the residence.  Since BOONE appeared confused about the number of firearms he actually had in the residence, SAs asked him to just show them the firearms he did have.

31.     BOONE escorted SAs to where the firearms were stored in the residence.  Prior to this search, your affiant read BOONE the ATF Form 3220.11, Consent to Search form.  BOONE

signed the Consent to Search form and gave consent to search his residence for the firearms purchased by KINNEY.

32.     While walking up the stairs to BOONE's bedroom, BOONE told SAs that Gun G and two other firearms in the closet were his guns. BOONE then stated that Gun E belonged to KINNEY. BOONE then stated that KINNEY gifted Gun C and Gun H to him.

33.     When asked to show either Gun E or Gun F, BOONE was unable to produce the firearms anywhere in the residence. BOONE produced Gun B from his bedroom closet. During the consensual search of BOONE's closet, your affiant found the pistol box for Gun A. When asked why the box for Gun A was still in his possession, BOONE stated that KINNEY traded Gun A but he kept the box. Inside the gun box was a blank firing pistol.

34.     Also located in BOONE's closet was a scale, suspected marijuana packaging material, and a safe. BOONE refused to open the safe and told SAs that there were no guns inside of it. While searching the bedroom, your affiant found Gun E under the mattress. In total, SAs located the following three of the eight pistols purchased by KINNEY in BOONE's residence: Gun G, Gun E, and Gun B.

35.     Along with these pistols, SAs also found a Mossberg, Model 88, 12 gauge shotgun, and a blank firing pistol that BOONE stated were his.

36.     SAs asked BOONE, "when did you bring the guns from Virginia to here?" and BOONE responded, "The Glock [referencing Gun G] and XD [referencing Gun B], I brung in July when I was staying over on Blakney, at my DC address." Your affiant noted that Gun B had been purchased by KINNEY, on June 25, 2018, and that Gun G had been purchased by KINNEY, on June 17, 2018. BOONE told SAs that he still uses the Washington, D.C. address for mail and other purposes. BOONE stated that he moved to the Temple Hills address in September 2018.

37.     BOONE stated that he registered the firearms in Washington, D.C. but that he lives in Maryland.  BOONE also stated that KINNEY was in the process of moving in to his Maryland residence.  Maryland State Police reported to ATF that no firearms have ever been registered by BOONE or KINNEY in the states of Maryland.  BOONE presented a carry permit for Washington, D.C. for Gun G, which was in BOONE's possession at the time of the interview in Maryland.

38.     BOONE then stated that KINNEY bought Gun B and gave it to him.  BOONE then told SAs that KINNEY brought all of the firearms, except Gun G and Gun B, over to his residence two weeks ago.  Prior to moving the firearms to his residence, BOONE stated that KINNEY's firearms were at her mother's house in Virginia.

39.     At the conclusion of the interview, BOONE told SAs that he was an aspiring rapper and that is stage name is Tiizie Tae.  BOONE stated that he filmed his music videos in Virginia and Maryland.

40.     BOONE agreed to turn over the following firearms purchased by KINNEY pending the investigation: Gun G, Gun E, Gun B, and a box for Gun A.

F.     Second Interview of KINNEY

41.     On December 3, 2018, your affiant re-interviewed KINNEY at her residence on Elfin Avenue in Capital Heights, Maryland.  SAs explained to KINNEY that a search of BOONE's residence, only produced three (3) of the eight (8) firearms she purchased.  SAs reminded KINNEY that she told SAs that all of her firearms were stored at BOONE's residence in Temple Hills, Maryland.

42.     When asked if she ever traded or sold any guns, KINNEY stated, "there were supposed to be two private sales done that I am aware of."  When asked to clarify, KINNEY stated that there were two private sales of firearms made, which BOONE facilitated online.  When asked

about the website used to facilitate the sales, KINNEY stated that she did not know the name of the website. When asked specifically about Gun A, KINNEY stated that she was not aware of that firearm being sold.

43.     When asked where the firearms were taken after they were purchased, KINNEY told SAs that she took the firearms to her mother's house in Manassas, Virginia. KINNEY stated that her mother was unaware the firearms were in the house. KINNEY then stated that she was in the process of moving in with BOONE but was not sure where.

44.     When asked about Gun G, purchased on June 17, 2018, KINNEY stated that the firearm was purchased for her own use. However, during BOONE's interview a few days earlier he stated that Gun G was given to him as a birthday gift.

45.     SAs asked KINNEY if she ever heard of a federal charge called lying to a federal agent, "a 1001". SAs presented KINNEY with a printout of 18 USC 1001. KINNEY read and acknowledged the document and continued to converse with SAs.

46.     KINNEY then told SAs that she transported the firearms to her residence in Washington, D.C. KINNEY stated her residence during that time was on "Danbury". Law enforcement databases confirmed that KINNEY's name was associated with an address on Danbury Street in SW, Washington, D.C.

47.     KINNEY stated that BOONE gave her some money to "buy a couple" of firearms. When asked why BOONE would not purchase his own firearms, KINNEY stated, "He knew that I could buy guns because I lived in Virginia because I was a Virginia resident." KINNEY told SAs that she did not know what BOONE did with the firearms after she purchased them. KINNEY stated, "I was left out of that, he leaves me out of a lot of stuff."

11

48.     KINNEY told SAs that BOONE would visit FFLs with her the majority of the time and suggested which firearms to purchase.  When asked to clarify, KINNEY then stated, "He picked them out." KINNEY told SAs that BOONE would give her money for the pistols whenever he got it.  When asked to clarify, KINNEY told SAs that BOONE would reimburse her whenever possible.

49.     KINNEY told SAs that she used BOONE's credit card on occasion to purchase the pistols.  She also explained that the pistols were supposed to be used for "appearance" and "props" for his rap videos.  SAs explained to KINNEY that real firearms are not props.  KINNEY stated that she thought BOONE owned a real pistol and that she did not know how to distinguish the difference between prop guns and real guns.

50.     Your affiant showed KINNEY a YouTube music video in which BOONE was holding a pistol, and KINNEY acknowledged that the video was filmed in Upper Marlboro, Maryland.

51.     KINNEY stated that she left some of the firearms in BOONE's possession and that, during that time, BOONE lived on Blakney Lane, SE, Washington, D.C.  When asked to clarify, KINNEY told SAs that BOONE stayed at Danbury Street, Washington, D.C., but used the Blakney Lane address for mailing purposes. KINNEY confirmed that BOONE did not live in Virginia. Both his actual address and mailing address were in Washington, D.C.

52.     When asked if BOONE transported firearms she purchased in Virginia to his Washington, D.C. address, KINNEY stated, "Yea..yea..yes." KINNEY also stated that BOONE kept a Glock near him.  When asked by SAs if any of the pistols she purchased were hers, KINNEY shook her head no and stated, "No".

12

53.    In an attempt to collude on their story to SAs, KINNEY admitted that BOONE called her to give her the dates and details about the firearm purchases. KINNEY stated that BOONE only instructed her to tell SAs about the "birthday thing", in reference to Gun G being purchased for his birthday. Though KINNEY conducted the transaction, she told SAs that BOONE bought Gun G for himself for his birthday.

54.    SAs explained to KINNEY that four pistols were unaccounted for. SAs expressed to KINNEY the urgent need to retrieve the outstanding four pistols but KINNEY could not provide any information regarding the location of those firearms.

G.    Third Interview of KINNEY

55.    On February 5, 2019, your affiant interviewed KINNEY again. In attempt to clarify certain details of the case, SAs asked KINNEY how the straw purchasing scheme began. KINNEY told SAs that she lived on Danbury Street in SW Washington, D.C., from approximately May 2015 to September 2018. KINNEY stated that she met BOONE in early 2017 while he was living in Laurel, Maryland. KINNEY stated that BOONE moved in with her at her residence on Danbury Street, on October 5, 2017. KINNEY told SAs that she actually lived in Washington, D.C. during the time frame she purchased all of the firearms in Virginia.

56.    KINNEY stated that the couple dated for a few months in 2017 before BOONE realized that KINNEY possessed a Virginia Driver's License. KINNEY stated, "He basically told me that I can buy guns because I have a Virginia license". When asked why she possessed a Virginia Driver's License even though she lived in Washington, D.C., KINNEY stated that she accumulated multiple parking tickets while living in Washington, D.C. and could not afford to pay the fines to get a D.C. license.

57.     KINNEY stated that BOONE initially presented her with an idea to start a gun collection. KINNEY stated that BOONE did the majority of the talking at the FFLs when they went to purchase firearms. KINNEY also stated that BOONE paid for and took possession and ownership of the purchased firearms.

58.     KINNEY stated that when she and BOONE moved from Washington, D.C. to Temple Hills, Maryland, BOONE moved all of his belongings and took the firearms from their D.C. residence. KINNEY told SAs that she never saw the firearms while packing and moving her belongings.

H.      Recovery of Gun D

59.     On July 5, 2019, your affiant received a Prince George's County Police Department (PGPD) fusion center report related to a handgun recovery during a vehicle stop, on June 25, 2019, at Keating Street and 28th Avenue, Temple Hills, Maryland.

60.     After smelling marijuana in the vehicle, one of the two occupants in the vehicle, Cortez Artriel BAXTER ("BAXTER"), stated that he had a handgun in the glove box and also a gun permit from Washington D.C. A search of the vehicle revealed several empty glassine baggies, a scale, and Gun D loaded in the glove box with nine rounds in the magazine and one round in the chamber. A second loaded magazine with eleven rounds was next to the loaded handgun in the glove box. Gun D was purchased by KINNEY, on December 2, 2017, from Manassas Pawn. The purchase was part of a multiple handgun sale conducted by KINNEY that day. When asked during interviews, neither KINNEY nor BOONE were able to tell agents the whereabouts of Gun D.

I.   Interview of BAXTER

61.   On July 11, 2019, your affiant traveled to an address on Keating Street, in Temple Hills, Maryland to interview BAXTER.  Upon arrival to BAXTER's apartment building, your affiant noticed that BAXTER's residence was one block away from BOONE's residence in Temple Hills, Maryland.  BAXTER answered the door, invited agents into his apartment and consented to an interview with agents.  During the interview, BAXTER told your affiant that he purchased Gun D from "Tae".  When asked if "Tae" was D'lanta BOONE, BAXTER said yes.

62.   BAXTER informed your affiant that BOONE was the son of his mother's previous boyfriend.  BAXTER stated that he purchased Gun D for $650 from BOONE, and BOONE showed him how to apply for a handgun carry permit in Washington, D.C.  A review of a sales receipt from Manassas Pawn showed that KINNEY purchased Gun D for $200.  BAXTER told your affiant that he purchased Gun D from BOONE approximately two months before he applied for his Washington, D.C. handgun permit.

J.   Preliminary Analysis of BOONE's Call Detail and Historical Cell Site Records

63.   A preliminary analysis of the historical cell site data associated with BOONE's Maryland area code phone number revealed that there were approximately 7,102 data activations records containing a cell site location, between May 28, 2018 and May 17, 2019.  Of those locations, only 114 of them (1.61%) were in Virginia, while 3,066 (43.17%) were in DC, and 3,922 (55.22%) were in Maryland.  65 of the 114 activations in Virginia (57%) occurred in the month of June, when KINNEY is known to have purchased firearms from FFLs in Virginia on behalf of BOONE.

64.   Further analysis revealed that BOONE's Maryland area code phone number made multiple phone calls to the FFLs KINNEY purchased firearms from. Below are the dates of

KINNEY's firearms purchases, cross referenced with the location of the FFLs from which

KINNEY purchased the firearms on behalf of BOONE.

    a.  On November 27, 2017, KINNEY purchased Gun A from Virginia Arms

Company, located in Manassas, Virginia. That day, BOONE's Maryland area

code phone number  initially connected to towers in Washington, D.C. at

approximately 1:55 p.m. and then traveled to Virginia. Cell site activation data

showed that, at approximately 6:59 p.m., BOONE's device connected to a tower

near Virginia Arms Company. BOONE's device then traveled back to

Washington D.C. where it had its last activation for the day at approximately 8:50

p.m. According to the sales receipt, the Glock pistol purchased in this transaction

was obtained through consignment, therefore, the pistol was purchased on

November 27, 2017 but not transferred to KINNEY until November 29, 2017

when it was paid in full. On November 29, 2017, BOONE's device followed a

similar pattern as November 27, 2017. BOONE's device initially activated in

Washington, D.C., at approximately 10:50 a.m., and then traveled to Virginia.

KINNEY was transferred Gun A, at approximately 7:08 p.m. At approximately

7:30 p.m., BOONE's Maryland area code phone number  connected to a tower

near Virginia Arms Company.

    b.  On November 30, 2017, KINNEY purchased Gun H from Nova Firearms, at the

time located in Falls Church, Virginia. That day, BOONE's Maryland area code

phone number activated in Washington, D.C., at approximately 9:46 a.m. and

then traveled to Virginia. At approximately 11:30 a.m., BOONE's Maryland area

code phone number connected to a tower near Nova Firearms. Cell site data

showed that, after connecting to towers near Nova Firearms for a few hours, BOONE's Maryland area code phone number traveled back to Washington, D.C. where the device had its last activation at 3:06 p.m.

c. On December 2, 2017, KINNEY purchased Guns C and D from Manassas Pawn, located in Manassas, Virginia. That day, BOONE's BOONE's Maryland area code phone number initially activated in Washington, D.C., at approximately 9:30 a.m., and then traveled to Virginia. BOONE's Maryland area code phone number connected to towers near Manassas Pawn from approximately 12:00 p.m. to 4:35 p.m. BOONE's Maryland area code phone number then traveled back to Maryland where the device had its last activation at approximately 6:22 p.m.

d. At approximately 2:45 p.m., on June 17, 2018, KINNEY purchased Gun G from Nova Armory, located in Arlington, Virginia. That day, BOONE's Maryland area code phone number initially connected to towers in Washington, D.C. during the early morning and then traveled to Virginia. BOONE's Maryland area code phone number then connected to towers near Nova Armory, at approximately 1:30 p.m. BOONE's Maryland area code phone number then traveled back to Washington, D.C. where the device had its last activation that day, at approximately 8:18 p.m.

65. Based on my training and experience, I know that the firearms discussed in this affidavit constitute firearms, pursuant to Title 18, United States Code, Section 921(a)(3), were not manufactured in the State of Virginia and, therefore, the firearms traveled in, and/or affected interstate commerce.

17

## CONCLUSION

66.     Based on the information contained in this affidavit, I submit that there is probable cause to believe that, on or about November 27, 2017, BOONE aided and abetted the making of false statements in relation to the purchase of a firearm, in violation of Title 18, United States Code, Sections 924(a)(1)(A) and 2.

Respectfully submitted,

Bernard Mensah, Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives

Subscribed and sworn to before me on
the ___ day of February, 2020.

_____ /s/_____
Ivan D. Davis
United States Magistrate Judge

18